THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIAM ROGERS-WALKER,   *

 Plaintiff,     *

           Case No. TJS-25-3213

  v.       *

BRIVO, INC.,      *

 Defendant.    *

   *  *  *  *  *  *

**MEMORANDUM OPINION**

Pending before the Court is Defendant Brivo, Inc.'s Motion to Dismiss ("Motion").[1]  ECF No. 14. Having considered the submissions of the parties (ECF Nos. 14, 19 & 21), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, Defendant's Motion will be granted in part and denied in part.[2] Plaintiff's request for leave to amend the complaint is granted.

## I.  INTRODUCTION

### a. Factual Background

Unless otherwise noted, the following facts are not in dispute. To the extent any facts are in dispute, they will be considered in the light most favorable to Plaintiff Mariam Rogers-Walker, the non-moving party. *Perkins v. Int'l Paper Co*., 936 F.3d 196, 205 (4th Cir. 2019).

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 17.

[2]  As discussed herein, the parties agree that the proper defendant is Brivo Systems LLC. However, because Brivo Systems LLC is not a named defendant, any reference to "Defendant" throughout this opinion refers to Brivo, Inc. As used in Defendant's Motion, "Brivo" will refer generally to Plaintiff's employer. ECF No. 14-1 at 13.

1

In October 2019, Plaintiff began working for a technology company where she oversaw multifamily sales initiatives. ECF No. 1 at 3. The company was acquired by Brivo Systems LLC, which Plaintiff describes as a "good ole boys club," and where, at the time of her employment, there were only four women working in the sales department. *Id.* at 4. In March 2020, Plaintiff began working as the Director of Multifamily Sales. *Id.* at 3. She was the only woman in a director of sales position. *Id.* at 4. Her position was directly supervised by the Senior Director of Multifamily and CRE[3] Sales. *Id.* In March 2021, Jeff Morrison ("Morrison") became the Senior Director of Multifamily and CRE Sales and Plaintiff's supervisor. *Id.*

According to Plaintiff, Morrison repeatedly harassed her from March 2021 until his termination in July 2022. For example, Morrison would become intoxicated, then call or text Plaintiff to belittle her and tell her that Brivo's leadership did not respect her or take her seriously because of her gender. *Id.* at 5. He also used her as an outlet to vent about the company, suggested that both of them quit, "cursed out" one of Plaintiff's clients in August 2021, and told Plaintiff and other employees that if it were not for him, they would not have jobs. *Id.* On or about March 30, 2022, Plaintiff met with members of the company's human resources department to discuss Morrison's conduct. *Id.* During this call, a member of the department asked Plaintiff how she had been encouraging the behavior, and no corrective action was taken to address Morrison's conduct thereafter. *Id.*

From June 22-24, 2022, Plaintiff attended a conference with Morrison and another sales manager. *Id.* at 7. One evening, the three individuals met with a vendor representative who made sexual comments toward Plaintiff. *Id.* In response, Morrison said, "[Plaintiff] has a lot of one-night stands." *Id.* Plaintiff contends that Morrison and the representative sexually degraded her at the

---

[3] The acronym "CRE" is not defined in the submissions.

professional event in front of her colleagues. *Id.* She left the event and texted Morrison about her discomfort and embarrassment. *Id.* He responded that she knew they were only teasing her, that the conversation was funny, that he could not walk on eggshells around her, and that he was treating her as an equal. *Id.* Later that day, Plaintiff met Morrison, the other sales manager, and the vendor representative at a restaurant. *Id.* at 8. The vendor representative continued to harass Plaintiff. When Plaintiff told them that she preferred to sit on the outside of the booth, Morrison said "stop being bitchy and just [] get in the fucking booth." *Id.* When she declined a drink, Morrison asked why she was being "such a bitch." *Id.* And when the vendor representative began touching Plaintiff's leg, she texted Morrison and the sales manager about the conduct and attempted to leave. *Id.* Morrison then physically prevented her from leaving the booth. *Id.* After the conference, Plaintiff claims that Morrison fabricated additional requirements for her to satisfy in order for her expense report from the conference to be approved. *Id.* at 9.

On July 6, 2022, Plaintiff reported Morrison's behavior at the conference to a human resources representative. *Id.* Morrison was terminated a few days later. *Id.* Plaintiff expressed interest in taking over his position and began assuming responsibilities of the Senior Director of Multifamily and CRE Sales. *Id.* On August 18, 2022, Brivo revised the commission agreements of Plaintiff and her team. *Id.* at 11. Plaintiff alleges that her sales quota increased significantly more than the others (including other sales managers) and was the only backdated agreement, resulting in less time for her to reach her quota. *Id.*

In December 2022, the company listed the vacant Senior Director of Multifamily and CRE Sales position. *Id.* at 12. Plaintiff claims that although she had essentially taken over this position in the interim, the company did not notify her that it was attempting to officially fill the position. *Id.* at 12-13. Plaintiff applied to the position and alleges that Brivo interviewed her despite the fact

that it had already filled the position with a male candidate and had no intention of promoting her. *Id.* at 13-14. Soon thereafter, Plaintiff submitted her two-week notice. *Id.* at 14. Plaintiff was directed to transition her sales accounts but claims that upon doing so she received a cease and desist letter and was then terminated. *Id.* Plaintiff's last day of employment with Brivo was in February 2023. ECF No. 14-1 at 7. Notably, Plaintiff omits almost all relevant dates from her complaint.

### b. Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 10, 2023, for discrimination based on sex, retaliation, the creation of a hostile work environment, and violations of the Equal Pay Act. ECF No. 14-2. Plaintiff named Brivo Systems LLC in the EEOC charge. *Id.* Plaintiff obtained a right to sue letter on June 30, 2025. ECF No. 1. She brought this action 88 days later, on September 26, 2025, naming Brivo, Inc. as the Defendant. *Id.* Brivo, Inc. filed its Motion to Dismiss on November 13, 2025, and the opposition and reply were filed thereafter. ECF Nos. 14, 19 & 21. Defendant's Motion is now ripe for decision.

### II.    LEGAL STANDARD

Federal Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; [and not to] 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must

consist of "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, a court must accept as true the well-pleaded allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

At the motion to dismiss stage, courts are limited as to what evidence may be considered. "While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion . . . this general rule is subject to several exceptions." *Olekanma v. Scruggs*, No. GLR-23-600, 2024 U.S. Dist. LEXIS 138008, at *13 n.6 (D. Md. Aug. 5, 2024) (internal citation omitted). And when "the complaint expressly references EEOC filings, and there is no dispute as to their authenticity . . . the Court will consider these documents." *Id.*; *see also Parker v. Child.'s Nat'l*

*Med. Ctr., Inc.*, No. ELH-20-3523, 2021 U.S. Dist. LEXIS 235885, at *13 (D. Md. Dec. 9, 2021) (stating that "courts in [the Maryland] district have consistently found that even under the strict demands imposed by Rule 12(b)(6), an EEOC charge not attached to a complaint may be considered without converting the motion into one for summary judgment" (internal quotation marks and citation omitted)); *Reeves v. Dimensions Health Corp.*, No. PWG-21-1674, 2022 U.S. Dist. LEXIS 152098, at *15 n.4 (D. Md. Aug. 23, 2022) (explaining that courts may consider documents attached to a motion to dismiss when they are integral to the complaint and authentic).

Here, Plaintiff referenced the EEOC charge in her complaint. *See* ECF No. 1 at 3. In its Motion, Defendant attached and relied upon the EEOC charge and Plaintiff's counsel's letter of representation referenced therein. *See* ECF No. 14-2. Because the EEOC charge and the associated letter of representation are integral to the complaint and their authenticity is not contended, the Court will consider this exhibit without converting the motion to one for summary judgment.[4]

## III.    DISCUSSION

### a.    Leave to Amend the Complaint

Defendant first argues that Plaintiff's complaint should be dismissed because Brivo, Inc. is the incorrect Defendant, never employed Plaintiff, and is not the entity that Plaintiff filed an EEOC charge against. ECF No. 14-1 at 11. It is undisputed that Brivo Systems LLC is named as

---

[4] Plaintiff contends that "because the parties have not engaged in authenticating documents and because this Court has not been briefed on the tolling agreement, the Court must deny the motion." ECF No. 19 at 7. Plaintiff does not actually dispute the authenticity of the EEOC charge and letter of representation (which was written by Plaintiff's counsel himself). Courts commonly consider EEOC charges, even those not attached to complaints, when deciding motions to dismiss. *See, e.g.*, *Wingate v. Johns Hopkins Bayview Med. Ctr., Inc.*, No. RDB-07-2923, 2008 U.S. Dist. LEXIS 132438, at *18 n.2 (D. Md. Apr. 21, 2008); *Bowie v. Univ. of Maryland Med. Sys.*, No. ELH-14-3216, 2015 U.S. Dist. LEXIS 42433, at *8 n.4 (D. Md. Mar. 31, 2015). And the "agree[ment] in principle to tolling EEOC deadlines" is an email exchange with Defendant's prior counsel that offers no finalized or signed tolling agreement. ECF No. 19 at 7, 13. The Court rejects these arguments.

Plaintiff's employer in both the EEOC charge and letter of representation. ECF No. 14-2. Plaintiff also does not dispute that she named the incorrect defendant in this suit. ECF No. 19 at 2-4. And the text of the complaint itself even refers to Brivo Systems LLC as the Defendant, further illustrating Plaintiff's error in naming Brivo, Inc. *See* ECF No. 1 at 3 ("Parakeet Technologies was acquired by Brivo Systems, LLC (hereinafter "Defendant")."). Plaintiff asks the Court to "recognize the Defendant as the proper party, but with a misspelling of its name[,]" and (through her opposition) requests leave to amend her pleadings and substitute Brivo Systems LLC as the defendant. ECF No. 19 at 4.

Pursuant to Rule 15, "a party may amend its pleading once as a matter of course," Fed. R. Civ. Pro. 15(a)(1), and in all other cases, "only with the opposing party's written consent or the court's leave," Fed. R. Civ. Pro. 15(a)(2). "The court should freely give leave when justice so requires," *id.*, "unless 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Rout v. First Sav. Mortg. Corp.*, No. RWT-11-505, 2011 U.S. Dist. LEXIS 96104, at *10 (D. Md. Aug. 23, 2011) (quoting *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008)). Although leave to amend should be liberally granted, leave may be denied when the proposed amended complaint fails to satisfy the federal rules and is therefore futile. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *see also Rout*, 2011 U.S. Dist. LEXIS 96104, at *10 ("Futile amendments are those that cannot survive a motion to dismiss." (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995))).

Here, Plaintiff seeks leave to amend her complaint and substitute Brivo Systems LLC for Brivo, Inc. As discussed herein, the following claims cannot survive the Rule 12(b)(6) Motion: Plaintiff's Maryland Fair Employment Practices Act ("MFEPA") claims in Counts II, III, and IV;

Plaintiff's Title VII claims in Counts II and IV to the extent they involve conduct that occurred prior to December 17, 2022; and Plaintiff's Count III hostile work environment claim. Amending the complaint would be futile as to these claims, and Plaintiff's request for leave is denied as to these claims. As to the remaining claims (Count I, and Counts II and IV to the extent they involve incidents occurring after December 17, 2022), Plaintiff's request for leave to amend the complaint is granted. *See Peerless Ins. Co. v. WEO Carpentry, LLC*, No. RDB-18-1040, 2019 U.S. Dist. LEXIS 94640, at *10 (D. Md. June 5, 2019) ("The minor misidentification of a Defendant is not dispositive so long as the pleadings dispel potential confusion."); *see also* Fed. R. Civ. P. 15(c)(1)(C) (stating when an amendment to a party's name relates back to the date of the original pleading).

### b.  The Equal Pay Act (Count I) [5]

The Equal Pay Act ("EPA") forbids employers from "[d]iscriminat[ing] . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." *Spencer v. Va. State Univ.*, 919 F.3d 199, 203 (4th Cir. 2019) (quoting 29 U.S.C. § 206(d)(1)). "The Equal Pay Act has a two-year statute of limitations unless the plaintiff claims that the defendant's conduct was willful, in which case a three-year period applies." *Becker v. Gannett Satellite Info. Network, Inc.*, 10 Fed. App'x 135, 138 (4th Cir. 2001). At the motion to dismiss stage, a plaintiff need not allege specific facts showing that the defendant willfully violated the EPA. *See Collins v. Peopleshare, LLC*, No. 22-55, 2023 U.S. Dist.

---

[5] Under "Claim I – Violation of Equal Pay Act," the complaint states "Federal and Maryland Fair Employment Practices Act." ECF No. 1 at 14. The Court assumes this is an error, as both the title and text of Count I refer to the Equal Pay Act.

LEXIS 152821, at \*34-35 (E.D. Va. Mar. 2, 2023). And when the alleged conduct falls outside of the two-year statute of limitations but within the three-year period, an allegation that a defendant acted willfully is enough to survive a motion to dismiss. *Id.*

Plaintiff's complaint does not explicitly allege that Defendant willfully violated the EPA. ECF No. 1. However, in her opposition, Plaintiff argues that Defendant intentionally paid her less than her male counterparts and the three-year statute of limitations should therefore apply. ECF No. 19 at 9-10. Defendant argues that because Plaintiff first alleges a willful violation in her opposition brief, and her claims do not support a willful violation, the two-year statute of limitations should apply.

Plaintiff's last possible date of unlawful conduct is February 28, 2023 (the last day of the month when Plaintiff alleges she was terminated). She brought this action on September 26, 2025, over two years after this date. ECF No. 1. Plaintiff's EPA claim is therefore time-barred under the two-year statute of limitations but not under the three-year statute of limitations. Reading the complaint in the light most favorable to Plaintiff, the Court surmises Plaintiff to have alleged that Defendant intentionally paid her less than her male counterparts when she was given a "shadow-promotion" to Senior Director of Multifamily and CRE Sales. *Id.* at 15. And in her opposition to the Motion, she explicitly argues that Defendant's conduct was willful. Taken together, these allegations that Defendant acted willfully are sufficient at this stage. A three-year statute of limitations applies and Defendant's Motion is denied as to Count I.

### c.  The Maryland Fair Employment Practices Act (Counts II, III, IV)

MFEPA is the state analogue of Title VII and "prohibits discrimination in employment on the basis of race, sex, and other protected classifications." *Smallwood v. Mayor of Balt.*, No. MJM-23-2891, 2025 U.S. Dist. LEXIS 25793, at \*40 (D. Md. Feb. 13, 2025). "MFEPA provides that 'a

complainant may bring a civil action against' her employer if (1) she has complied with MFEPA's administrative exhaustion requirements; (2) 'at least 180 days have elapsed since the filing of the administrative charge or complaint;' and (3) 'the civil action is filed within 2 years after the alleged unlawful employment practice occurred.'" *Green v. iMentor, Inc*., No. RDB-24-2567, 2025 U.S. Dist. LEXIS 152807, at *14 (D. Md. Aug. 8, 2025) (quoting  Md. Code Ann. § 20-1013(a)(1)(i)-(iii)(1)).

To satisfy MFEPA's exhaustion requirements, a plaintiff must file an administrative complaint against her employer and with the Maryland Commission on Civil Rights or with a federal or local human relations commission. *See id.* at *15. When a plaintiff files only with a federal human relations commission, the complaint must be filed within six months after the date on which the alleged discriminatory act occurred. *See* Md. Code Ann. § 20-1004(c)(1). If a plaintiff fails to do so, then dismissal is appropriate. *See, e.g.*, *Green*, 2025 U.S. Dist. LEXIS 152807, at *16-17 (dismissing MFEPA claims because plaintiff failed to file an EEOC charge within six months of the alleged unlawful employment conduct).

Defendant argues that dismissal is appropriate because Plaintiff's MFEPA claims were not administratively exhausted. ECF No. 14-1 at 14-15. Plaintiff fails to respond to this claim. Plaintiff alleges a pattern of unlawful conduct, culminating in her termination on an unknown date in February 2023. ECF No. 14-1 at 7, n.1. The latest possible date that unlawful employment conduct could have occurred was therefore February 28, 2023. Because Plaintiff did not file a complaint with the Maryland Commission on Civil Rights or any local human relations commission, she had six months (until August 28, 2023) to file an EEOC charge and administratively exhaust her claims under MFEPA. Plaintiff's EEOC charge was filed on October 13, 2023 (almost eight months after the latest possible discriminatory act). ECF No. 14-2. Accordingly, Plaintiff failed to

administratively exhaust her MFEPA claims and substituting Brivo Systems LLC as the Defendant would be futile. Defendant's Motion is granted as to the MFEPA claims in Counts II, III, and IV.

### d. Title VII Timeliness

Before asserting a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies by filing a "'charge' of discrimination with the EEOC or an appropriate state or local agency within 180 days 'after the alleged unlawful employment practice occur[s].'" *Smallwood*, 2025 U.S. Dist. LEXIS 25793, at *21 (quoting 42 U.S.C. § 2000e-5(e)(1)). But here, "[b]ecause Maryland law prohibits the gender-based discrimination alleged by Plaintiff, Plaintiff had 300 days from the occurrence of the last discriminatory act to file a charge with the EEOC under Title VII." *Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 866-67 (D. Md. 2004) (collecting cases) (explaining that the extended 300-day time period to file a Title VII action applies when state law prohibits the employment practice at issue). Title VII claims may fall into two categories, each with different timing requirements: (1) discrete discriminatory and retaliatory acts, and (2) hostile work environment claims.

"Regarding Title VII claims for discrete discriminatory and retaliatory acts, the Supreme Court has stated that a party 'must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it.'" *Smallwood*, 2025 U.S. Dist. LEXIS 25793, at *22 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). Each incident of discrimination and retaliation constitute a separate, actionable, unlawful employment practice that "starts a new clock for filing charges alleging that act." *Id.* (internal quotation marks omitted) (quoting *Morgan*, 536 U.S. at 113). And "[d]iscrete acts such as . . . failure to promote . . . are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Mezu v. Morgan State Univ.*, 367 Fed. App'x 385, 388 (4th Cir. 2010) (internal quotation marks omitted) (quoting

11

*Morgan*, 536 U.S. at 114). Put simply, "a plaintiff cannot recover 'for discrete acts of discrimination or retaliation' that occurred outside of the 300-day limitations period." *Abraham v. Trident Vantage Sys., LLC*, TDC-23-3195, 2024 U.S. Dist. LEXIS 196795, at *7 (quoting *Morgan*, 536 U.S. at 105).

Hostile work environment claims are treated differently. "Unlike claims for disparate treatment and retaliation, the continuing violation doctrine applies to a hostile work environment claim." *Perkins*, 936 F.3d at 209 n.5; *see also Hester v. Bd. of Educ.*, TDC-22-0128, 2022 U.S. Dist. LEXIS 187817, at *14 (D. Md. Oct. 12, 2022). Under this doctrine, "[a]ny incidents occurring prior to [the 300-day] limitation period 'are time-barred unless they can be related to a timely incident as a series of separate but related acts amounting to a continuing violation.'" *Wang*, 334 F. Supp. 2d at 867 (quoting *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997)). Notably, however, the continuing violation doctrine may not be used to "bootstrap discrete and unrelated discriminatory acts into hostile work environment claims to save untimely or unexhausted claims." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 694 (E.D. Va. 2018) (citing *Malghan v. Evans*, 118 F. App'x 731, 734 (4th Cir. 2004)).

When determining whether the continuing violation doctrine applies, courts consider whether the discriminatory acts alleged in the pre- and post- limitations period (1) involve the same type of employment actions, (2) occurred relatively frequently, and (3) were perpetrated by the same managers. *Morgan*, 536 U.S. at 121. Based on these considerations, if the court finds that the incidents are not adequately linked to one another, then the continuing violation doctrine does not apply. *Mustafa*, 313 F. Supp. 3d at 693-94.

**i. Gender Discrimination (Count II) and Retaliation (Count IV)**

Plaintiff filed her EEOC charge of discrimination on October 13, 2023. Any claims based on acts of discrimination or retaliation occurring more than 300 days before that date (December 17, 2022) are time-barred. *Abraham*, 2024 U.S. Dist. LEXIS 196795, at *7. Defendant argues that Plaintiff's claims of discrete acts of discrimination and retaliation that occurred before December 17, 2022, must be dismissed because they are time-barred. ECF No. 14-1 at 17-18. Plaintiff does not respond to this argument but argues that her retaliation claim is sufficiently pled,[6] an issue which was not raised in the Motion. ECF No. 19 at 7-8.

As it relates to Count II, Plaintiff claims that at some time between December 2022 and February 2023, she applied for, interviewed, and was denied the Senior Director of Multifamily and CRE Sales position because of her gender. *See* ECF Nos. 1 at 12 & 14-1 at 9. To the extent that Plaintiff's claim involves incidents occurring prior to December 17, 2022, those incidents are time-barred, and the Motion is granted. But given the ambiguity of Plaintiff's complaint, and the possibility that she was denied the promotion sometime after December 17, 2022, the Motion is otherwise denied.

As it relates to Count IV, Plaintiff claims that after she reported Morrison's conduct, Brivo retaliated against her by requiring her to submit additional expense reports in June 2022; by failing to compensate her when she took over the responsibilities of the Senior Director of Multifamily and CRE Sales beginning in July 2022; by revising her commission agreement in August 2022;

---

[6] Plaintiff's response in opposition confuses her own claims. According to the complaint, Count II is a gender discrimination claim based on Defendant's failure to promote Plaintiff. And Count IV is a retaliation claim alleging that after Plaintiff reported Morrison's sexual harassment, Defendant retaliated by revising her commission agreement and by failing to promote and appropriately compensate her. ECF No. 1 at 19-20. In her opposition, Plaintiff argues that "the retaliation for Counts II and IV are sufficiently pled." ECF No. 19 at 9. The Court assumes this is an error.

and by subjecting her to a sham interview then failing to promote her when she officially applied for that position at some point between December 2022 and February 2023. ECF No. 1 at 9, 19-20. The only retaliation claims that could fall within the 300-day limitation period are based on the allegedly sham interview, Brivo's failure to promote Plaintiff, and her claim that she was not fairly compensated from July 2022 until the Senior Director of Multifamily and CRE Sales position was filled in December 2022. The Motion is denied as to these claims. Plaintiff's retaliation claims relating to her expense reports and revised commission agreement are untimely, and the Motion is granted as it relates to these claims.

If discovery clarifies the dates at issue, then the timeliness of Plaintiff's remaining gender discrimination and retaliation claims may be resolved at summary judgment. *See Taylor v. Walter Kidde Portable Equip., Inc.*, No. 1:21CV839, 2022 U.S. Dist. LEXIS 172179, at *23 (M.D.N.C. Sept. 23, 2022) ("Therefore, at this early juncture, where the necessary facts have not been fully established, this court defers ruling on the timeliness of Plaintiffs' claims."); *Wallace v. Freight Drivers & Helpers Local No. 557 Pension Fund*, No. JKB-11-2062, 2012 U.S. Dist. LEXIS 91321, at *24 (D. Md. July 2, 2012) ("Defendants' motion to dismiss [] must therefore be denied and the issue of the timeliness of these claims must be resolved at a later date, either on a motion for summary judgment or at trial.").

### ii.  Hostile Work Environment (Count III)

Defendant argues that Count III should be dismissed because Plaintiff's claims are untimely and the alleged conduct was not severe or pervasive, or based on Plaintiff's gender. ECF No. 14-1 at 18-24. Plaintiff fails to respond to either argument.

Plaintiff claims that she was subject to a hostile work environment because of the following conditions: Morrison's harassment from March 2021 to July 2022; human resources' response

when Plaintiff reported Morrison's conduct in March 2022; her sales quota adjustment in August 2022; and the series of events relating to the change in Plaintiff's position from July 2022 to February 2023, including Plaintiff's absorption of Morrison's responsibilities without additional pay, the alleged sham interview, Brivo's failure to officially promote her, Brivo's intimidation of Plaintiff with legal action for transitioning her accounts, and Brivo's failure to pay her commissions and bonuses. ECF No. 1 at 17-18.

As it relates to Morrison's conduct, human resources' response, and the sales quota adjustment, the Motion is granted. These allegations are outside of the 300-day lookback period and are unrelated to any of the incidents that occurred in or after December 2022. Morrison's conduct involves sexual and degrading comments made at generally unknown dates and times (other than August 2021 and June 2022). ECF No. 1 at 4-9. Human Resources' response includes two employees named Gloria Salmeron and Abby Foreman, and their alleged failure to take action against Morrison once on March 30, 2022. *Id.* at 5. Notably, Ms. Salmeron and her supervisor, Maureen Perrelli, terminated Morrison after Plaintiff's second complaint of his conduct. *Id.* at 9. One month later, Brivo revised Plaintiff's commission agreement, along with the other individuals on her team. *Id.* at 11. These claims are entirely separate from the claims arising from December 2022 and later that relate to the end of Plaintiff's employment. Accordingly, the continuing violation doctrine does not apply, and these claims are untimely.

However, it is possible that Plaintiff's remaining claims fall within the 300-day lookback date. And because the timing of these incidents is unclear, dismissal based on the timeliness of these claims would be premature. Nevertheless, these allegations are insufficient to support a hostile work environment claim and dismissal is appropriate.

A plaintiff's "[w]orking conditions form a hostile work environment when they are 'permeated with discriminatory intimidation, ridicule, and insult' that 'alter the conditions of the victim's employment and create an abusive working environment.'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). At the motion to dismiss stage, a plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her race [or national origin] or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [] her employer.'" *Id.* (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)). And "[s]he must also allege that her protected characteristic under Title VII was the 'but for' cause of the alleged harassment." *Id.*

> Plaintiff's only hostile work environment claim that is even potentially timely alleges that
>
> [t]he Defendant kept Mrs. Rogers-Walker in her role while assigning her the duties of her departed superior without compensating her commensurate to him. The Defendant then arranged a sham interview to further harass her. The Defendant instructed her to transition her accounts, then attempted to intimidate her with legal action for transitioning her accounts. Finally, the Defendant failed to pay her for her commission and bonuses under the revised Commission Agreement.

ECF No. 1 at 18. Plaintiff does not plausibly allege, and offers no facts from which it could be inferred, that this conduct was severe or pervasive.

When considering "whether the alleged working conditions are severe or pervasive enough to support a Title VII claim" courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Laurent-Workman*, 54 F.4th at 211 (internal quotation marks omitted) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). Plaintiff's claim involves unfavorable personnel decisions and the uncomfortable aftermath of those decisions. This is not sufficient to support a hostile work

16

environment claim, which typically encompasses intimidation, ridicule, insults, humiliation, and physically threatening conduct. *See Onwudiwe v. Becerra*, No. TDC-21-1620, 2023 U.S. Dist. LEXIS 146181, at \*35-36 (D. Md. Aug. 18, 2023) (explaining that conduct relating to personnel decisions and actions that the plaintiff deemed unfair did not constitute the type of conduct that underlies hostile work environment claims).

To be clear, Plaintiff makes no effort to establish otherwise. Defendant's Motion discusses the merits of Plaintiff's hostile work environment claim in detail, ECF No. 14-1 at 22-23, yet Plaintiff fails to acknowledge or respond to any of these arguments in her opposition. Even in the light most favorable to Plaintiff, it cannot be inferred that Brivo or its employees subjected her to a hostile work environment based on her sex. Accordingly, Plaintiff's hostile work environment claim is dismissed in its entirety.

## IV.    CONCLUSION

For the reasons discussed herein, Defendant's Motion is **GRANTED** in part and **DENIED** in part. Plaintiff's request seeking leave to amend her complaint is **GRANTED**. An accompanying Order follows.


August 6, 2026                                                             /s/
Date                                            Timothy J. Sullivan
                                                Chief United States Magistrate Judge

17